In re METCALF.

No. 4079.

District Court, N. D. Texas, Dallas Division.

Feb. 21, 1942.

---

[7] 46 U.S.C.A. § 1303(4), (3) (b).

Robert E. Currie, of Dallas, Tex., for Longhorn Roofing & Products, Inc.

R. G. Carter, of Dallas, Tex., for Dallas Engineering Co.

C. D. Evans, of Athens, Tex., in pro per.

J. S. Simkins and Claude L. Milburn, both of Corsicana, Tex., for bankrupt.

ATWELL, District Judge.

The objecting creditors claim that the bankrupt kept no books from which his financial condition and business transactions might be ascertained. Sec. 14, Bankruptcy Act, 11 U.S.C.A. § 32. That he made certain materially false statements as to his financial condition upon the basis of which credit was extended to him.

The date fixed by the referee within which objections to the discharge applied for could be filed, was November 25, 1941. This date was sufficiently in the future to comply with the rules. There was no extension of that date. See Lerner v. First Wisconsin National Bank of Milwaukee, 294 U.S. 116, 55 S.Ct. 360, 79 L.Ed. 796.

Creditor, Longhorn Roofing Products, Inc., filed an objection on November 24th, because of the alleged failure to keep books or records, and for the alleged failure to explain satisfactorily losses of assets. On the day set for the hearing, the same creditor amended, putting in an additional specification with reference to $373.50, which it is unnecessary to notice, since its position was that as to that amount its debt should not be affected by a discharge. In this presentment, it specifically alleged that it did not waive its original objections. On December 6th it amended with reference to the alleged failure to keep books or records and to explain losses of assets. It at no time presented any objection because of an alleged false statement to secure credit.

The Dallas Engineering Company, on November 21st, filed an objection because of the alleged failure to keep books or records, etc., and because the bankrupt had obtained property upon a materially false statement as to financial worth for the purpose of securing credit. It also objected because of the bankrupt's failure to satisfactorily explain loss of assets. On December 20th, this same creditor somewhat enlarged its objections as to failure to keep books and its allegation as to the securing of credit by false statement, and to its failure to explain satisfactorily the loss of assets.

The third creditor, C. D. Evans, filed on November 19th an objection on the ground that the bankrupt had secured from him $203.50 worth of lumber by fraud. This particular opposition might be construed into a rather crude showing against the discharge which would operate on this particular creditor's account. It hardly comes within any of the other specifications.

The bankrupt maintains that all of the opposition is subject to exception, either because not filed in time, or, because amended after the time, or may not be advantaged for all creditors even if one creditor did come within the time.

It seems to me that under the present state of the law, an objection filed by a creditor within the time may be amended after the time, and that an objection complying with the law by one creditor may be the basis for testimony of other creditors. Mazur v. Hirsch Shoe Co., 5 Cir., 46 F.2d 973, as well as many cases cited in the Fourth Edition of Gilbert's Collier.

I do not think that the proof justifies a finding that the bankrupt did not keep books. If we, as expert bookkeepers and accountants, speak with reference to his attempt in that direction, we would answer that what he did have was rather crude, but we could not, truthfully, say that he kept no books nor records.

Malone, the special agent of the referee, who went to examine the situation at Corsicana, did not even make an appropriate inspection of the records that were there. He satisfied himself by glancing at a corner in which the records were piled and was unable to say what was in those records. So, his testimony is of no value to us.

The testimony of the little bookkeeper, Miss Soape, shows that there was an honest attempt to keep books and she was the bookkeeper.

The bankrupt was a carpenter and lumber seller and contractor. He was engaged in building houses.

The records furnished the bookkeeper included a ledger and some preliminary memoranda. To this must be added a rather complete and satisfactory banking record and statements and books showing receipts in detail, and payments in detail, as well as bills receivable, which were placed there as security. In addition to all that, there was a metal file of complete records of every building under construction.

The Circuit Court of Appeals, in Texas National Bank v. Edson, 5 Cir., 100 F.2d 789, 791, speaking through Judge Holmes, and following the present statute, calls attention to the last portion of the paragraph which is that, "Unless the court deems such acts or failure to have been justified under all the circumstances of the case." This added wisdom vests a large judicial and circumspect discretion in the trial judge. It was, doubtless, for the purpose of saving the tradesman and the rough-and-tumble industrialist from beheading by any technical bookkeeping system.

In addition to what I have just said, is the testimony of Miss Soape, to the effect that nothing was amiss or awry with the finances, or receipts, or merchandise. Everything was straight and honest.

The other specification, which dealt with alleged false statements for the purpose of securing credit, is a little more troublesome for the bankrupt.

In the record are two statements, one made on March 27, 1940, purporting to show the condition on February 5, 1940. The other, a statement made on April 10, 1941, purporting to show the condition on that date. The first was signed and made by Metcalf, and seems to be, in some respects, inexcusably false. His net worth is placed at $11,187.81 in the first statement. In the net worth is included certain machinery etc., as well as $6,712.18 as being in cash in the bank, plus certain accounts and notes receivable in the sum of approximately $4,000, with $7,283 in merchandise. There seems to be no justification for that statement.

The second statement was not made by Metcalf, but was made by his bookkeeper. Metcalf told her to make it. She did make it and placed it on his desk for his inspection and signature. He may or may not have looked at it. If he did look at it, he did not change it in any way, but he did not sign it, and she finally signed it in his name, by her, at the request of a pressing Dunn & Bradstreet agent, who also called out some figures for her to place therein.

She says that the statement was not supported by the facts; that she knew it was not correct in some respects; that some of the information she had taken from the 1940 statement and assumed that Metcalf would make such changes in it as were in accordance with the present situation.

That statement is untrue. It is false in that there was not $2,217.18 in the bank, nor was there approximately $15,000 in accounts and notes receivable, nor was there equipment of the approximate value of $2,346.05, which belonged to the bankrupt, nor was there a net worth of $12,192.09.

While the Act liberalizes the bookkeeping part of the statute, it rather stiffens the securing of credit upon materially false statements.

Subdivision c of Section 32, relating to discharges, Title 11 U.S.C.A., provides, in the third subdivision, "or (3) obtained money or property on credit * * *, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition." The proviso to that subdivision is that, "If, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

I am satisfied that the bankrupt had knowledge of the making or publishing of the last statement which was complied by his bookkeeper, with the assistance of the commercial agent, and transmitted without the bankrupt's signature, and so far as the record is concerned, without his having seen it, and without his having known what was in it. I am satisfied that the creditors extended credit upon the faith of it. The testimony might be more satisfactory upon this particular point and this particular point is an essential in any

denial of a discharge because of this particular act.

The beginning of paragraph (c) is that, "The court shall grant the discharge unless satisfied that the bankrupt has," committed one or more of the grounds which prevent such discharge.

The whole purpose of the Act is to relieve the honest debtor. A corollary to that is that the dishonest debtor shall not be assisted.

The discharge may be denied.